**JONES v. FANN.**

No. 3293.

Court of Civil Appeals of Texas. Beaumont.
July 1, 1938.

Rehearing Denied Sept. 20, 1938.

Sewell, Taylor, Morris & Garwood, of Houston, for appellant.

R. C. Musslewhite, J. J. Collins, and R. W. Fairchild, all of Lufkin, for appellee.

WALKER, Chief Justice.

On the 31st day of January, 1936, Ferguson Fann and his father, M. E. Fann, were hauling logs by contract for J. A. Handley; they owned their trucks, mules, tools, and other equipment used by them on the job, and were paid on the basis of the amount of logs—by the thousand feet. On that day, while driving his truck loaded with logs, a tree, sawed down by one of J. A. Handley's employees, fell across the truck and killed Ferguson Fann. Appellant, Elliott Jones, Attorney-in-fact for Lloyds America, was the compensation insurance carrier of J. A. Handley. As the surviving widow of Ferguson Fann, appellee, Mrs. Thelma Fann, duly filed her claim for compensation with the Industrial Accident Board; this suit was filed by her against appellant, in the district court of Polk County, as an appeal from an adverse award of the Industrial Accident Board. Appellant's defense was that, at the time he was killed, Ferguson Fann was not an employee of J. A. Handley, but was an independent contractor.

Answering special issues, the jury found that the deceased was an employee of J. A. Handley, and that he was killed in the course of his employment; by their answers to a series of questions, the jury found that J. A. Handley had the right to control and direct, and did control and direct, the material details of the employment of Ferguson Fann; it was further found that Fred Handley, who directed and controlled to a large extent the work of Ferguson Fann, was not a partner, but was an employee of his father, J. A. Handley; the jury found that neither Ferguson Fann, nor any other employee in his class of work, had worked in his employment the whole of the year preceding his injury, and fixed his average daily wage at $6 as "being just and fair to both parties"; other facts were found entitling appellee to a lump sum settlement. On the verdict of the jury, judgment was entered in appellee's favor against appellant for the sum of $6,403.39; from the judgment appellant has duly prosecuted its appeal to this court.

We overrule appellant's contention, advanced as a proposition of law on the undisputed testimony, that, at the time he was killed, Ferguson Fann was an independent contractor; the evidence raised the issue, and supports the jury's verdict, that he was an employee of J. A. Handley, and not an independent contractor.

Under the undisputed evidence, at the time of his death, Ferguson Fann was working—hauling logs—for J. A. Handley. That basic fact created the presumption that he was an employee, and put appellant under the burden of showing that the relation was not that of employer and employee; in other words, appellant had the burden to establish that Ferguson Fann, at the time he was killed, was an independent contractor. Liberty Mutual Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416.

The contract under which Ferguson Fann and his father, M. E. Fann, were working at the time he was killed was made with J. A. Handley by M. E. Fann, and rested in parol. M. E. Fann testified that he and his son, under this parol contract, submitted themselves "to the control of Mr. Handley with reference to the details of the work". This witness testified further, questions and answers reduced to

narrative: "We did not work continuously but would occasionally lay off; Mr. J. A. Handley would command us to lay off. Mr. Handley kept a foreman or superintendent in the woods to direct and supervise our work; he directed us where to go and when to go, and when to quit and when to commence. Mr. J. A. Handley or his son Fred were the only persons who gave us instructions in regard to the details of our work; Fred was his father's woods foreman. We went to work with the rest of the crew about 6:30 or 7 o'clock in the morning; Mr. Handley instructed us. When the log train came and brought the crew we generally went to work. When the time came to go to work the foreman would say to the crew 'Time to go to work'. The crew, including my son, obeyed instructions, 'They got up and started to work', my son and I didn't work in the evening until we 'were ready to quit'; the foreman would hollow 'Time off'. Mr. Handley kept the land lines, 'had a surveyor that kept the land lines'. Mr. Handley transferred us from one portion of the country to another. The foreman, Mr. Fred Handley, told us what logs to haul and 'we went and hauled them'. It required more hard work than skill to load logs on a truck. Mr. Handley reserved the right us where to get the logs and where to haul them and where to put them; he didn't tell us how to load our trucks."

On the last point Mr. J. A. Handley testified that he did not undertake to tell any of the log haulers, not even those driving his own trucks, how to load the logs.

Mr. Fred Handley testified that his father, J. A. Handley, financed the logging operations in issue, and that he himself had no money invested in these operations; that he was working for his father as woods foreman; and further:

"Q. What did you do as foreman, what were your duties, and what did you actually do with reference to directing the work of the log haulers? A. Showed them where to haul the logs and where to carry them to, and I usually pointed out the road, and I instructed them how to cut the logs and how low to cut the stumps.

"Q. Were there any instructions given as to the size of timber to be cut and hauled? A. Yes, sir."

Under his contract with the Fanns, J. A. Handley had the right to discharge them at any time, and they could quit at any time;

he always withheld two months' pay of all his employees, including the Fanns. Mr. Handley carried a policy of workmen's compensation insurance with appellant, and reported the Fanns to appellant as his employees; he reported their earnings as earnings of his employees, and, under its policy, paid appellant premiums on the earnings of M. E. and Ferguson Fann. George Terrell, appellant's general agent, knew these facts and, with this knowledge, appellant retained and appropriated to its own use and benefit the premiums paid by Handley on the earnings of Ferguson Fann.

Under the rule announced by the Commission of Appeals in Shannon v. Western Indemnity Co., 257 S.W. 522, Judge German writing the opinion, the right of control exercised by J. A. Handley, under the terms of the logging contract, over the work of Ferguson Fann raised the issue that Ferguson Fann was not an independent contractor, that he was an employee of J. A. Handley. We would stress the following elements of the contract: The Fanns were employed to haul logs; Handley reserved the right to instruct them "how to cut the logs and how low to cut the stumps"; he instructed them what roads to take in hauling the logs—selected for them their route; he instructed them what days they should work and gave them their hours to begin working and to quit working; J. A. Handley reported the earnings of Ferguson Fann to appellant, and paid appellant premiums on his earnings. The facts enumerated clearly raised the issue that Ferguson Fann was an employee of J. A. Handley, and not an independent contractor. For additional authorities see Chancellor v. Norwich Union Ind. Co., Tex.Civ.App., 2 S.W.2d 495; Ochoa v. Winerich Motor Sales Co., supra; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679; J. W. Zempter Const. Co. v. Rodgers, Tex.Civ.App., 45 S.W.2d 763; Maryland Cas. Co. v. Kent, Tex.Com.App., 3 S.W.2d 414; Texas Employers' Ins. Ass'n v. Owen, Tex.Com.App., 298 S.W. 542; Liberty Mutual Ins. Co. v. Boggs, supra; 39 C.J. pp. 53, 1011.

Appellant specially emphasizes the following points as controlling: (a) The Fanns furnished their own equipment; (b) the Fanns were engaged in a distinct and generally recognized employment, that of loghauling; (c) the undertaking was for an indefinite period; and (d) they

were paid "on a quantitative standard". These facts were merely evidentiary. On the point that the Fanns furnished their own equipment see Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679, opinion adopted by Superior Court; J. W. Zempter Const. Co. v. Rodgers, Tex.Civ.App., 45 S.W.2d 763; Maryland Cas. Co. v. Kent, Tex. Com.App., 3 S.W.2d 414; Texas Employers' Ins. Ass'n v. Owen, Tex.Com.App., 298 S.W. 542. The mere fact that the deceased was engaged in "loghauling" does not compel the conclusion that he was an independent contractor, and the fact that he was employed "for an indefinite period" tends to support the conclusion that Fann was Handley's employee. Liberty Mutual Ins. Co. v. Boggs, supra; J. W. Zempter Const. Co. v. Rodgers, supra. While the fact that the Fanns "were paid on a quantitative standard" is of great weight in support of the contention that they were independent contractors, it is not controlling, but merely raised the issue as one for the jury.

Under the undisputed evidence, appellant contends that the Fanns were employed by J. A. Handley as a partnership, did their logging as partners; their legal proposition is that a partnership is not within the coverage of our Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., citing 32 Tex.Jur. 215, and Root v. Tomberlin, Tex.Civ.App., 36 S.W.2d 596. That issue was not sent to the jury. The Fanns were employed by J. A. Handley to haul logs; he contracted for their joint services. M. E. Fann testified that, when all the expenses were paid, he and Ferguson Fann divided between them what was left. He testified further:

"Q. Half represented his earnings and half your earnings? A. Yes, sir.

"Q. When two men saw, do they saw in pairs? A. Yes, sir.

"Q. You and your son were working together in hauling the logs out? A. Yes, sir.

"Q. Just as other haulers would work in pairs the same way? A. Yes, sir."

Under the doctrine of Samford v. Petroleum Cas. Co., Tex.Civ.App., 81 S.W.2d 743, the evidence raised the issue that the Fanns, as employees of J. A. Handley, were within the protection of our Workmen's Compensation Act. On the facts of this case, it is not necessary for us to express an opinion on the relation of partnerships, as such, to the Workmen's Compensation Act.

The proposition that, as a matter of law, Fred Handley was a partner with his father in the logging business for Carter Lumber Company is overruled. That issue was submitted to the jury and they answered that he was an employee of his father. The following summary of the evidence, taken from appellee's brief, supports the jury's verdict:

"Evidence in the record established:

"a. That Fred Handley did not draw on the logging account until after his father became sick and unable to transact the business;

"b. That the contract made with Carter Lumber Company under which the logging project on which the Fanns and the Handleys were engaged was made by J. A. Handley with Carter Lumber Company as an individual;

"c. That the work was carried on in the name of J. A. Handley as an individual;

"d. That J. A. Handley employed his son, Fred Handley, to help him carry on the work and agreed to compensate him for his services by giving him half of the earnings on the project;

"Fred Handley testified:

"a. That he was employed by and working for his father as woods foreman;

"b. That his father financed the project;

"c. That he had no agreement with Carter Lumber Company to carry on the project, but was merely working for his father as woods foreman;

"d. That he was paid for his services as woods foreman by his father giving him fifty per cent of the profits;

"e. That there was no understanding or agreement that he was to be responsible for any of the debts or losses of the project;

"f. That it was expressly understood and agreed between him and his father that his father had the right to discharge him at any time."

Tanner v. Drake, 124 Tex. 395, 78 S.W.2d 162, supports our conclusion on this point.

By propositions 9, 10, and 11, appellant contends that there "was no competent evidence" to show that appellee could not

"compute" her compensation under Secs. 1 and 2 of Art. 8309; that, under Sec. 3 of Art. 8309, the inquiry should have been related to "other employees of the same class" and the court erred in "limiting the inquiry to one specific employee" and since, under the undisputed evidence, there were other truck drivers doing substantially the same class of work as deceased for substantially a year preceding his death, the answer of the jury to 'question No. 4 was without support in the evidence and should have been set aside. The wage issue was submitted on the following questions answered as indicated:

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the deceased, Ferguson Fann, had not worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding his injury?" To which the jury answered: "He had not."

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that no other employee of the same class as the deceased had worked substantially the whole of the year immediately preceding the death of the decedent, in the same or in a similar employment, in the same or neighboring place?" To which the jury answered: "They had not".

■■■ The answers of the jury to questions 3 and 4 have support in the evidence, and these issues were not subject to the defects assigned against them by propositions 9, 10, and 11. There was no evidence—at least appellant failed to bring forward any evidence on this point in its brief—that "other employees of the same class" worked substantially a year "in the same or similar employment". It seems to be appellant's contention that since "loghauling" had been a business in that neighborhood for more than a year, the question should have been framed so as to submit "loghaulers" as a class, rather than as individual employees; quoting their exception: " * * * an issue should be submitted inquiring whether there was a class of employees such as the decedent who worked substantially the whole of the year preceding his death in the same or neighboring place, rather than confine the jury to the earnings of any one particular employee". Appellant's

propositions and exception do not correctly state the law. We quote the pertinent provisions of Art. 8309:

"1. If the injured employe shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"2. If the injured employe shall not have worked in such employment during 'substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employe of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed.

"3. When by reason of the shortness of the time of the employment of the employe, or other employe engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties.".

Under the evidence, the first section was not available to appellee, and was found against her by the jury's answer to question No. 3. The second section was sent to the jury by question No. 4; this section does not call for the wages of a "class" but of "an employee." A claimant of compensation is not required to prove his case beyond the specific requirements of the Workmen's Compensation Act; as related to the point at issue, beyond the specific requirements of the pertinent provisions of Art. 8309. Appellee's proof met the requirements of the statute, and the court's charge submitted her case to the jury as made by her proof. Traders & General Ins. Co. v. Wimberly, Tex.Civ. App., 85 S.W.2d 343; Texas Employers' Ins. Ass'n v. Pearson, Tex.Civ.App., 67 S.W.2d 630; Texas Ind. Ins. Co. v. Smith, Tex.Civ.App., 73 S.W.2d 578.

We give special issue No. 5: "What sum of money, do you find from a preponderance of the evidence, would represent an average daily wage of the deceased that would, under the evidence before you, be just and fair to both plaintiff and defendant?"

Answering this question the jury found "$6.00". We sustain appellant's proposition that the answer to this question is without support in the evidence, and against all the evidence. Under the undisputed evidence, the wages of a log hauler, as such, was $2.40 per day. Appellee offered testimony to the effect that, by furnishing his own labor, teams, trucks, tools, and equipment, Ferguson Fann made as much as, if not more than, $6 per day. But appellee can not have compensation based on the earnings of the teams, trucks, etc.; her compensation must be limited to the earnings or wages of Ferguson Fann as a log hauler. On that point, the evidence limited her recovery to $2.40 per day. There are no circumstances in the record authorizing the jury, in fixing a wage fair and just to both appellant and appellee, to find a sum in excess of the daily wage paid log haulers as such.

Since appellant concedes, and so asserts in its proposition, that $2.40 was the average daily wage of a log hauler, we pretermit a discussion of its proposition that the court erred in refusing to define the term "average daily wage" as submitted by question No. 5.

The court did not err in refusing to submit to the jury appellant's requested issue inquiring as to what amount, if paid in cash, would relieve "the manifest hardships and injustices" plead by appellee. The court was not required to submit that issue in the form and manner requested by appellant; had the question been properly framed, we express no opinion on appellant's right to have had it submitted.

From what we have said it follows that the judgment of the court is excessive, and that all other points assigned by appellant are without merit. It is, therefore, our order that if, within 15 days, appellee remits a sum sufficient to reduce her compensation to an average daily wage of $2.40, the judgment will be affirmed; otherwise, the judgment of the lower court will be reversed and the cause remanded for a new trial.