## EMPLOYERS' CASUALTY CO. v. WATSON et al.

No. 2031.

Court of Civil Appeals of Texas. Beaumont.

Nov. 20, 1930.

Morris Sewell, Taylor & Morris and W. J. Knight, all of Houston, for appellant.

J. N. Snell and Kenneth H. Aynesworth, both of Houston, for appellees.

O'QUINN, J.

The Employers' Casualty Company brought this suit in the district court of Harris county, Tex., to set aside an award of the Industrial Accident Board awarding appellee compensation for the total loss of the sight of his left eye.

Appellee answered by general demurrer and cross-action, setting up the right to recover for the total and permanent loss of the sight of his left eye, and prayed for recovery in a lump sum.

Appellant, by supplemental petition, answered appellee's cross-action by general demurrer, general denial, and specially that if appellee suffered an injury he sustained same while in a state of intoxication, and while in the act of unlawfully attempting to injure another person.

The court overruled appellant's general demurrer to appellee's cross-action, and the case was tried to a jury upon special issues, in answer to which they found that appellee had sustained the total loss of the use of his left eye, and that at the time he suffered such loss he was not willfully attempting to injure another. On the findings of the jury judgment was rendered for appellee for compensation at the rate of $12 per week for 100 weeks, payable in a lump sum, as for the loss of an eye. The judgment further awarded to J. N. Snell, attorney for appellee, one-third of the amount recovered as attorney's fee. Motion for a new trial was overruled, and the case is before us on appeal.

Appellant's first proposition asserts error in the court's overruling its exception to the court's charge because of its failure to submit to the jury an issue as to whether the injury received by appellee was received by him while he was in a state of intoxication, and the court's further refusing to give to the jury its special requested issue, by appellant, submitting said issue.

The statute, article 8309, section 1, second subdivision 3 of said article, provides that the term "injury sustained in the course of employment" shall not include "an injury received while in a state of intoxication." It is contended that if appellee was injured while in a state of intoxication, this would

928

be and was a complete defense to his suit or claim for compensation. This defense was pleaded by appellant and the evidence abundantly raised the issue. The court failed to charge on this issue, and refused to give appellant's special requested charge submitting same for the jury's finding. If the statute is given a strict and literal interpretation, then appellant's assignment should be sustained. But we do not believe the court erred in refusing this special issue requested because there was no charge requested to accompany said first requested charge as to whether, if appellee was in a state of intoxication, that such intoxication was a proximate cause of his injury. We think that the mere fact that an injured employee was in a state of intoxication at the time he received his injury should not bar him from the right to compensation regardless of whether it had to do with his receiving his injury or not, but that if the intoxication contributes to his injury or caused same then the law applies. Suppose an employer who is constructing a three-story building has one employee at work on the third story, and another at work on the ground around the base of the building, and this employee working at the base becomes in a state of intoxication, but not so as to incapacitate him for work, and he is in the actual discharge of his work when the workman at the top lets fall a brick or piece of timber that strikes the employee at the base and seriously injures him; should it be said in that case that the injured employee is not entitled to compensation although his being in a state of intoxication in no manner contributed to or caused his injury? We do not think such was the intent of the law, but that the law inended that where the state of intoxication incapacitated the employee, in that it rendered him less capable of caring for and protecting himself against accident or danger, or caused him to be quarrelsome or insulting toward other persons, or had to do with causing him to commit an unlawful assault upon such other person, then in that case he would not be entitled to compensation. In other words, the state of intoxication was the proximate cause of his injuries, or contributed to his receiving same, by reason of which he is not entitled to compensation. Both the issue of intoxication and whether such intoxication was a proximate cause of appellee's receiving his injury were proper and material, but under the facts above stated, the court did not err in refusing the requested charge because a finding that appellee was in a state of intoxication at the time he received his injury, without a further finding that such intoxication was a proximate cause of the injury, would have been a finding on a merely evidentiary matter, and not the finding of an ultimate fact.

The second proposition complains that the court erred in refusing appellant's motion for a directed verdict. This contention is based upon the fact that the evidence did not show that appellee had suffered the total and permanent loss of the sight of his eye, but showed that appellee still had some small degree of sight perception. Appellee pleaded the total and permanent loss of the sight of his left eye. He was awarded judgment for the total loss of the sight of an eye.

Dr. S. T. Pulliam, a witness for appellant, testified in substance that he saw appellee several times right after the accident and treated him for the injury. He said that appellee's vision was about $22/100$ off. He said:

"As to it not totally destroying the vision of this man's eye, as I say, if I remember right it was a little less than $22/100$ I am quite sure; that means he had a little sight."

Again, he said:

"I think the glasses I put over his left eye corrected his vision to some extent; I think it helped a little. I do not know how much loss of vision he had, but my records, if I had them, would show exactly. However, I think he had a little vision in that left eye. I think the glasses I put over that eye helped his vision some; I do not know how much, but some. It must have improved it some, but I have no personal recollection of how much his vision in that eye was improved. If I could find my records I could tell you exactly. I remember that he had a mighty bad eye. Mighty bad eye distress injury and I knew that he had a ruptured chroid. My treatment of his eye caused the inflammation to subside. I know that he had considerable loss of vision. I think he was practically blind at one time, is my recollection of the case, practically a total loss of vision; my recollection is that he had about a $20/100$ probably at the time I discharged him. There is a little bit of the vision left in the left eye, but not enough to do any good with. He might have been able to see a horse or a cow."

He further testified:

"$22/100$ vision is what he had at that time, soon after the injury. It was very poor vision. You can't read a newspaper with that vision. You can only see very large objects. It is not a useful vision. I do remember that one test his vision was $22/100$. With a vision as I state, with that reduction in his vision, he could only tell very large objects. The distance away you indicate, he would hardly be able to count four fingers with this vision out of that left eye. I did say that he could tell what large objects were. But the matter of recognizing a man, with that extent of vision I have stated, if he had just that one eye would depend on whether he

could see his face or not; it is pretty hard to tell, but .22⁄100 is a mighty poor vision. If I remember right, he had a little less than 22⁄100, that is my recollection. As to it not totally destroying the vision in this man's eye, as I say, if I remember right it was a little less than 22⁄100. I am quite sure, that means he had a little sight."

He further testified:

"Since being on the witness stand in this case before, I have had occasion to make an examination of Joe Watson's eye; I examined him a few minutes ago and find there is a vision in his right (left) eye which is 21⁄100; with lenses, presses it up 20–30. That left eye, he claims a vision of being able to count fingers at about one foot distance; beyond that, not able to distinguish fingers but could see my arm. If one's eye is reduced to the extent that I say, I found in the objective examination I made of him, and can't count fingers at a distance of more than a foot or arm's length, such vision of that eye is termed by specialists—well, of course, that is a question of what you would term total blindness—not blindness in the sense that you would would say totally blind because the eye can still perceive light, but total blindness for all practical purposes."

Again:

"If I estimate the loss of his sight from the vision he gives me it would be a very large proportion of the sight, probably 90%. I mean fully 90% of his vision in the eye is lost, if what he tells me is true."

Appellee Joe Watson testified:

"It was the left eye that was injured, I cannot see out of this left eye—except I can see the light—and have not been able to see out of that eye since I was struck in it."

He further testified:

"As I told you when I was on the stand before, I can't see the fingers of your hand, as you are holding them, with my left eye. With my right eye I can't count the fingers on your right hand; I can't see them. With my right eye closed I can see something over there, but I can't make out whether it is you or what it is; I can't tell whether it is a man or not, with my right eye closed."

The undisputed proof shows that appellee has not lost the total sight of his eye. As we understand the testimony, he still retains some 10 per cent. of the vision of his injured eye. Article 8306, § 12, R. S. 1925, provides compensation for the total and permanent loss of the sight of an eye. Appellee pleaded the total and permanent loss of the sight of his left eye, and prayed for the compensation provided for such loss. This evidence, we think, shows that appellee has suffered the total loss of the sight of his eye for all practical purposes, and in a very similar case, Travelers' Insurance Co. v. Richmond, 284 S. W. 698, we so held, and further held, under such facts, the injury was thus compensable, but the Supreme Court, 291 S. W. 1085, 1086, thought differently, and reversed the case. In that case the injured employee had suffered a 99 per cent. loss of the vision of his eye, except when aided by glasses, but the Commission of Appeals, in passing upon the question of whether he had suffered the total and permanent loss of the sight of his eye, said:

"In our view, the record exhibits undoubted proof that 'the sight of one eye' is not 'totally and permanently lost.' Hence, the injury sued upon and proved is not compensable according to that term of section 12, article 8306, R. S. 1925."

The Supreme Court not only approved the opinion of the Commission of Appeals, but approved the holdings on the questions discussed. The judgment in the instant case, being for the total and permanent loss of the sight of the eye, under the facts and the above holding will have to be reversed, but we will not here render judgment but will remand the case for further proceedings.

What we have said relative to the second proposition disposes of appellant's third and fourth propositions.

■ Appellant complains that over its objections the court permitted appellee to introduce in evidence the report of the accident made by the subscriber. The record discloses that Jacob Rudnick was connected with the Pace Tire Company, for whom the injured employee was working, and that Rudnick made out the reports of accidents occurring in their business, and that he made out this report. Under section 5 of article 8309, R. S. 1925, such reports are neither admissions nor evidence against the insurer or the subscriber in a contested case where the facts set out therein, or any one of them, are sought to be contradicted by the association or the subscriber. This is a contested case, and appellant, the insurer, is seeking to contradict at least a portion of the statements in said report. The report was offered as evidence for all purposes—that is, generally. Under the statute the report was not admissible. Texas Employers' Insurance Ass'n v. Lynch (Tex. Civ. App.) 29 S. W.(2d) 899.

Appellant presents other propositions, but as the questions thus raised may not arise on another trial, they will not be discussed.

For the errors pointed out the judgment is reversed, and the cause remanded.