**TRADERS' & GENERAL INS. CO. v. WILLIAMS et al.**

No. 1178.

Court of Civil Appeals of Texas. Eastland.

Dec. 8, 1933.

Morrison & Morrison, of Big Spring, and Lightfoot & Robertson and Nelson L. Scurlock, all of Fort Worth, for appellant.

Sullivan & Sullivan and James Little, all of Big Spring, for appellees.

FUNDERBURK, Justice.

Mrs. Grace Williams, surviving widow of J. H. Williams, deceased, together with Loree Mae Williams and Jess W. Williams, minor children of said J. H. Williams, deceased, by Mrs. Grace Williams as their next friend, brought this suit against Traders' & General Insurance Company—the insurance carrier for Maytag Southwestern Company—to recover compensation insurance for the death of said J. H. Williams. The accident involved was an automobile collision which occurred on June 11, 1932, while the alleged employee was making a trip out of Big Spring to complete the sale of a washing machine in the alleged course of his employment with said Maytag Southwestern Company. The defendant pleaded a general denial, and for a special defense alleged that Williams was an independent contractor. From a judgment for plaintiff based upon the verdict of a jury rendered in response to special issues submitted, the defendant has appealed.

The first question presented is whether Williams was, as a matter of law, shown to be an independent contractor. The evidence was uncontroverted that the accident resulting in his death occurred while he was on his way to complete the sale of a washing machine, the negotiations for the sale of which had theretofore been begun. The washing machine was the property of Maytag Southwestern Company, and it was a part of Williams' duty to sell it. In his efforts to do so he was undoubtedly performing a service for the owner. These facts alone, in the absence of rebutting testimony, created a presumption that Williams was an employee of said owner. Liberty Mutual Ins. Co. v. Boggs (Tex. Civ. App.) 66 S.W.(2d) 787, and authorities therein cited.

Williams' contract of employment was in writing and was in evidence. Whether it had the legal effect of rebutting said presumption that he was an employee in that it showed that he was an independent contractor, or raised an issue of such fact, may be conclusively determined, we think, by this test, viz., Did the contract transfer the right of control of Williams, or of his work, other than as to the result of the work, from Maytag Southwestern Company to Williams so as thereby to deprive the former of such right of control? For the reasons which, in our opinion, support the correctness of this test, see Liberty Mutual Ins. Co. v. Boggs, supra. When the written contract is considered in connection with the above-mentioned presumption, it is easy to see that, if the contract be merely silent as to who has the right of control, then the presumption as a matter of law is not rebutted, and Williams must be held to be an employee, rather than an independent contractor. To state the matter differently: The contract must, as against said presumption, expressly or impliedly, take the right of control away from the Maytag Southwestern Company in order for Williams to be an independent contractor.

The contract, as we read it, does not transfer the right of control to Williams. It is not merely silent as to who has the right of control, but, on the contrary, it clearly provides that the Maytag Southwestern Company retains that right. The powers which a contract expressly or impliedly give to a party thereto are synonymous with such party's rights under the contract. He has the right to exercise the powers. The contract in question expressly reserves to Maytag Southwestern Company the power (and consequently the right) to discharge Williams "at any time, for any reason, it sees fit." Among the duties of Williams under the contract were:

"To devote his entire time to the sale of Maytag washing machines (unless special permission has been obtained from a District Manager)"; to be "accountable and responsible for stock and moneys intrusted to him"; to "receipt for and report disposition or location" of washing machines; to "be bound by all rules and regulations * * * which may hereafter be adopted." The contract further provided that the salesmen were to be under supervision of the district manager, and that the machines, goods, and merchandise belonging to the company and intrusted to him "are subject to its orders."

The result of the work which under the contract Williams was to perform could in no sense be said to be a product. It was simply a service. Whether one employed only to perform services can be regarded as an independent contractor has been seriously questioned by good authority. 23 Tex. Jur. p. 555, § 13; King v. Galloway (Tex. Com. App.) 284 S. W. 942; Southern Surety Co. v. Shoemake (Tex. Civ. App.) 16 S.W.(2d) 950; United States Fidelity & Guaranty Co. v. Lowry (Tex. Civ. App.) 231 S. W. 818; Texas & N. O. R. Co. v. Parsons (Tex. Civ. App.) 109 S. W. 240; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495. We cite the leading case of Jensen v. Barbour, 15 Mont. 582, 39 P. 906. If, under our decisions this rule must be held to have been modified to include some kinds of service, then we think, at least the service must be definite, and not terminable without liability at the mere will of one or the other of the parties short of the completion thereof. Liberty Mutual Ins. Co. v. Boggs, supra; Texas Employers' Ins. Ass'n v. Owen (Tex. Com. App.) 298 S. W. 542; J. W. Zempter Const. Co. v. Rodgers (Tex. Civ. App.) 45 S.W.(2d) 763. It is our conclusion that the contract in question shows as a matter of law that Williams was an employee under the provisions of the Workmen's Compensation Law.

This view of the case renders it immaterial that there was no submission of the issue of whether Williams was an employee, and whether or not a proper definition of independent contractor was given.

■ The undisputed evidence showed that Williams was killed while in the course of his employment, except for the effect of the statutory provision that: "The term 'injury sustained in the course of employment,' as used in this law, shall not include * * * an injury received while in a state of intoxication." R. S. 1925, art. 8309, § 1, second subd. 3. If Williams, at the time of the injury, was in a state of intoxication, proof of that fact was a complete defense to plaintiff's cause of action. Dill v. Texas Indemnity Ins. Co. (Tex. Com. App.) 63 S.W.(2d) 1016; Texas Indemnity Ins. Co. v. Dill (Tex. Civ. App.) 42 S.W.(2d) 1059. Plaintiff had the burden of pleading and proof to show that the injury was "sustained in the course of employment." Any evidence tending to show that the employee sustained his injury while in a state of intoxication would certainly tend to rebut the proposition that the injury was sustained in the course of employment. Appellant offered, and the court excluded, testimony of that character. The testimony was competent and material upon the issue joined by plaintiff's allegation that Williams was in the course of his employment and the defendant's general denial. The testimony was just as certainly admissible under that issue as if the defendant had specially pleaded that said employee was at the time of the accident in a state of intoxication. Had such additional issue been tendered by the pleadings, the testimony would have been equally admissible under both issues. It is therefore immaterial that the additional issue was not tendered by special plea, since the other issue was duly joined. Boswell v. Pannell, 107 Tex. 433, 180 S. W. 593.

■ We cannot, we think, by considering the question of the sufficiency of the evidence thus excluded, determine that such erroneous exclusion of the testimony was harmless. It cannot be assumed that defendant offered all the evidence available. The court excluded the testimony for the express reason that there was no pleading to support it. That reason was applicable to any other evidence on that issue that could have been offered. Appellant was under no duty to offer more evidence subject to the same objection and inadmissible under the court's ruling. The evidence excluded being competent and not without some probative value, we cannot hold its exclusion harmless.

■ One special issue submitted was: "What do you find and believe from a preponderance of the evidence was the average weekly wage of said J. H. Williams, deceased, for the period of one year immediately preceding June 11, 1932?" In connection with that issue, the court charged the jury as follows: "In answering the following special issue No. Six, you are instructed that you will consider the average daily wage or salary which an employee of the same class working the whole of the year immediately preceding June 11, 1932 would have earned during the time when employed in the same or similar employment to that of J. H. Williams, deceased, in the same place or in a neighboring place thereto, or if you are unable to determine the average weekly wage by the foregoing rule, then you will consider the average weekly wage in any manner which you may deem just and fair to the parties in this suit, as you may determine from the evidence in this case. The average weekly wage may be computed to be one-fifty second part of the average annual wage." Appellant, by its seventh, eighth, and ninth propositions under assignments of error 7 to 9, inclusive, con-

tends that there was error in submitting the issue and giving the instruction. It would have been just as well, no doubt, to have inquired: "What do you find from a preponderance of the evidence was the average weekly wages of J. H. Williams, deceased, at the time of his death on June 11, 1932?"

We do not understand that any complaint is intended to be made of the form of the issue. In fact, it does not clearly appear that the submission of the issue is complained of at all, apart from the accompanying instruction. Plaintiff had the burden of pleading and proving the "average weekly wages" of the deceased employee at the time of the accident. A part of the pleading was "that his average weekly wages as defined by the statute was $31.15 per week." This is the averment of a fact, and not of a conclusion. Had nothing more been alleged to tender the issue of "average weekly wages," the pleading would have been good as against general demurrer. Davies v. Texas Emp. Ins. Ass'n (Tex. Com. App.) 16 S.W.(2d) 524. It would have been, in our opinion, equally as good against special exception. This is the only conclusion to be drawn, it seems to us, from the necessary effect of the statutory definition of "average weekly wages." R. S. 1925, art. 8309, § 1, first subds. 1, 2, 4, and 5. Perforce of such definition, the brief allegation to the effect that the employee's average weekly wages were $31.15 was the legal equivalent of detailed allegations of fact as follows: "That said Williams had been working in the employment in which he was working at the time of the injury, whether for the same employer, or others, substantially the whole of the year immediately preceding said injury, and including the market value of board, lodging, laundry, fuel and other advantage, which said employee during said time received, if any, from said employer, or employers, as part of his remuneration, but excluding any special expenses entailed on him by the act of his employment one-fifty second part of three hundred times, the average daily wage or salary which he earned during the days when so occupied, amounts to the sum of $31.15; or, if said Williams had not worked in said employment during substantially the whole of the year, other employees of the same class did so work substantially the whole of such immediately preceding year, in the same or in similar employment, in the same or a neighboring place, and one-fifty second part of three hundred times the average daily wage or salary earned by them for the days when so employed, including and excluding the items aforesaid, amounts to the sum of $31.15."

If the pleading was sufficient, then undoubtedly the inquiry embodied in the question to the jury called for a finding upon identically the same issue as that pleaded. The correctness of the submission of the issue would not, in our opinion, be dependent upon whether the injured employee had been working in the same employment for substantially the whole of the year preceding the injury, nor any other particular fact; provided, of course, there was evidence to show the existence of all essential elements embodied in the definition of "average weekly wages." We cannot properly regard any of appellant's assignments of error as presenting a contention that there was no evidence of "average weekly wages," and that therefore for that reason the issue should not have been submitted. If in effect such a contention is presented, it is based upon assignments challenging the correctness of the instruction accompanying the issue, and not the issue itself.

All of the assignments of error relating to average weekly wages have express reference to the instruction given in connection with the special issue. It is not contended, however, that the court should not have given any instruction whatever. If any such contention were here urged, accompanied with a showing of proper and timely objection, we would be under the duty to sustain it. The proposition is undoubtedly now settled that in a case submitted to a jury upon special issues it is error to give a general or special charge, or, in other words, a general or special instruction, on the law of the case. See discussion and authorities cited in Standard v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 47 S.W.(2d) 443. The instruction in question was not objected to on the ground that it was improper to charge or instruct the jury at all. That error is therefore waived. We are next confronted with the question of whether in view of such waiver we have any duty to inquire into the extent and nature of particular harmful effects of giving the instruction. It occurs to us that, since the giving of an instruction of any kind on the law of the case is presumed to be harmful, a waiver of the error in giving it renders immaterial the extent or number of prejudicial effects. For us to enter upon such inquiry and announce our conclusions upon same would be to imply that the court should have given a different and correct instruction, which would be contrary to the policy of the law not to permit the giving of any such charge or instruction at all.

Enough has been said, perhaps, to dispose of all the assignments of error and propositions thereunder relating to "average weekly wages." A fuller statement of our views, however, in reference to questions attempted to be raised and others suggested by the record, is deemed necessary to prevent possible misunderstanding and consequent error in future proceedings in the case. It already sufficiently appears that in our opinion, if upon another trial the case be submitted upon special issues, no charge or instruction on the law of the case should be given.

In connection with the issues only the definition, or explanation, of legal terms employed in stating the issues, and then only when necessary to enable the jury properly to pass upon and render their verdict, should be given. R. S. 1925, art. 2189. When there happens to be statutory definitions, they, of course, are the definitions which in substance, at least, must be given. In R. S. 1925, art. 8309, under the heading "Definitions and general provisions," there is prescribed a definition, among others, of the phrase "average weekly wages." The definition is very comprehensive, and at first glance appears to consist of all of numbered paragraphs or first subdivisions 1 to 5, inclusive, of section 1. First subdivision 3, however, although set out between parts of the definition, is itself, in our opinion, no part of such definition. It furnishes conclusive evidence by its own terms that it is not. It employs the very phrase defined, "average weekly wages," and it is axiomatic that a word or phrase cannot be defined in terms of itself. Furthermore, the term as used is referred to as being "above defined," which, if not entirely accurate, in that a part of such definition follows as well as precedes it, shows, at any rate, that the definition is something outside the subject-matter of first subdivision 3. It is obviously no part of the definition, for the further reason that, since the only function of a definition is to make clear the boundaries between that which is intended to be included and that excluded, not even by legislative fiat can that be made a definition, or a part of a definition, which in its very nature can perform no part of the function of a definition. The provision that when, in addition to reasons stated, "or other good and sufficient reasons, it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties," certainly relates to a subject necessarily outside the definition. The proper construction of said first subdivision 3 is, we think, that it undertakes to state the conditions (only two of them being mentioned, and others to be ascertained as directed), under which the prescribed definition of "average weekly wages" has no application. Thus regarding first subdivision 3 as no part of the definition, but as intended to state elements outside the definition, the complete definition prescribed is to be found in first subdivisions 1, 2, 4, and 5. It may be given to a jury in the exact language of the statute, or its substance may be otherwise stated as follows: "Average weekly wages" means 1/52 of 300 times the average daily wage or salary, including the market value of board, lodging, laundry, fuel, and other advantage, which can be estimated in money which the employee receives from the employer as part of his remuneration, but excluding any sums which the employer has

paid to the employee to cover any special expenses entailed on him by the act of his employment, which an injured employee, who has worked substantially the whole of the year immediately preceding the injury, whether for the same employer or not, shall have earned in such employment during the days when so employed; or 1/52 of 300 times the average daily wage or salary including and excluding the items aforesaid, which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment, in the same or a neighboring place, shall have earned in such employment during the days when so employed.

If the foregoing interpretation of the statute be correct, it follows that, if the compensation claimed cannot be based upon the "average weekly wages" as defined, but that resort must be had to the provisions of first subdivision 3, a simple allegation to the effect that the "average weekly wages" of the injured employee is a stated sum would not be sufficient as a pleading. In such case, the facts to show a basis for recovery of compensation under first subdivision 3 would have to be alleged. For the same reason submission of an issue simply inquiring of the jury what was the average weekly wages of the employee would not be proper, but an issue embracing the particular elements relied on under first subdivision 3 would have to be submitted. If, under allegations to the effect that the "average weekly wages" of the injured employee was a stated sum, the claimant seeks to prove the wages of other employees, he should not, upon objection, be permitted to do so until he proves, or produces evidence to raise an issue of the fact, that the injured employee had not worked substantially the whole of the years, etc. An issue involving the amount of "average weekly wages" is believed to be analogous to an issue concerning value. Just as when value is an issue, evidence of actual worth (actual or intrinsic value) cannot over objection be admitted until it is shown prima facie that there was no market price (market value), so, we think, the court should not hear evidence of the wages of other employees unless it is first shown prima facie that the injured employee had not been engaged in the same employment for the same employer, or another, during substantially the whole of the year preceding the injury. Likewise, if the claimant's pleading presents a claim for compensation based upon "average weekly wages," and in the alternative under first subdivision 3 no evidence under the latter should be received until it is shown prima facie that the compensation cannot be based upon "average weekly wages" under the statutory definition. If the evidence should show conclusively as a matter of law that, because of the absence of one or more essential elements,

"average weekly wages" cannot be made the basis of compensation, then no such issue should be submitted. Of course, if the evidence raised an issue of fact as to which of the two methods was available to determine the basis of compensation, then both issues would have to be submitted. When, however, the evidence may show conclusively that one or more of those elements of the definition of "average weekly wages" embraced in first subdivision 1 are absent, such fact would not call for any change in the form of the issue to be submitted, nor, of course, would it require any change in the definition. The jury would simply make their finding according to the elements of the definition which the evidence supports. If, under the evidence, there existed a question of fact as to whether the amount of average weekly wages was necessary to be found according to the elements of the definition contained in first subdivision 1, or those in first subdivision 2, the jury would find the amount of average weekly wages guided alone by the evidence as applied to the definition.

We are of the opinion that it cannot be said as a matter of law in this case that the amount of "average weekly wages" cannot be determined as a basis for the computation of compensation. It is contended that, since the testimony showed that the employment of the injured employee had not existed for substantially the whole of the preceding year, and the wages of other employees consisted of commissions, the earnings of no two being the same, it was necessary to determine the compensation under first subdivision 3. There was evidence to show that there were about ten salesmen working out of Big Spring. We do not think the fact that no two of them received the same amount of commissions is conclusive. If the jury could fairly determine the average, that would, we think, be sufficient, at least in the absence of facts showing for some other reason, or reasons, it was impractical to use "average weekly wages" according to the statutory definition as the basis of computing compensation. Millers' Indemnity Underwriters v. Boudreaux (Tex. Civ. App.) 245 S. W. 1025.

We are not to be understood as holding that a claimant may not, if he chooses to do so, allege separately the facts to show a basis for the computation of average weekly wages under first subdivisions 1, 2, and 3, or any one or two of them, and thereupon be entitled to develop his evidence, and have the issues submitted accordingly. In such case, however, the use of the term "average weekly wages," and the consequent necessity of defining it, should be avoided to prevent confusion. The inquiry could better be made in reference to "average daily wages." In any such case, the claimant would be restricted, of course, in his right to recover to the theory alleged, and, if more than one, to such as were properly alleged in the alternative. He would also be under the necessity of showing, if he claimed under first subdivision 2, that first subdivision 1 was not applicable, and, if he claimed under first subdivision 3, that neither 1 nor 2 were applicable. American Employers' Ins. Co. v. Singleton (Tex. Com. App.) 24 S.W.(2d) 26; Texas Employers' Ins. Ass'n v. Comer (Tex. Civ. App.) 42 S.W.(2d) 832.

For the reasons above discussed, the judgment of the court below must be reversed, and the cause remanded, and it is accordingly so ordered.

HICKMAN, Chief Justice.

I concur in the judgment recommended in this case, but do not agree with all that is written in the opinion. I find myself out of agreement with the holding that a pleading which merely alleges the average weekly wages of the claimant to be a certain amount would be good as against a special exception. I believe a compensation insurer has a right to know, in advance of the trial, whether the claimant expects to prove that he has worked for substantially the whole of the next preceding year, or will rely upon proof of the wages received by others. Neither do I concur with that portion of the opinion beginning with this sentence, "Enough has been said, perhaps, to dispose of all the assignments of error and propositions thereunder relating to average weekly wages," and concluding with the suggested definition of the term "average weekly wages." Since I do not regard the portions of the opinion with which I am not in agreement as affecting, in any manner, the disposition that should be made of the appeal, or as being necessary to a decision of this case, I can see no particular reason for my writing upon these questions.