**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

Mrs. Tomi L. SMITHSON et al., Appellees.

No. 15778.

Court of Civil Appeals of Texas.

Dallas.

Oct. 28, 1960.

Rehearing Denied Dec. 30, 1960.

Henderson & Bryant, Sherman, for appellant.

Slagle, Hughes & Kennedy, Sherman, for appellees.

DIXON, Chief Justice.

James Crockett Smithson, while driving a pick-up truck belonging to Moody Electric Company, Inc., on Highway No. 75 between Sherman, Texas and Denison,

Texas, sustained injuries in an automobile collision from which injuries he subsequently died.

His surviving widow, appellee Mrs. Tomi L. Smithson, individually, and as next friend of her minor son, filed suit under the Workmen's Compensation Act, and was awarded a judgment of $11,464.72.

The parties entered into stipulations as to all material facts except the question whether the injuries from which Smithson died were incurred in the course of his employment by Moody Electric Company, Inc. A jury answered this question favorably to appellees.

### Evidence.

Because of their nature appellant's points on appeal require us to examine carefully the evidence in this case.

Moody Electric Company, Inc., has its place of business in Sherman, Texas. Smithson, a journeyman electrician employed by Moody Electric Company, Inc., lived in nearby Denison, Texas.

The collision occurred about mid-afternoon of October 21, 1958. Mrs. Smithson testified that about 10:00 o'clock that morning she received a telephone call from her husband who was on a job at Perrin Air Force Field. He asked whether it looked like rain. This was because they had just moved their house from one lot to another and part of the roof was not in place. According to Mrs. Smithson, she told her husband it did not look as if it might rain and that she wasn't worried about it at all. Their further conversation as testified to by Mrs. Smithson was as follows: Her husband said, "If it looks like it's going to, give me a ring so I can get ahold of Mr. Wells to take care of the furniture.

"Q. All right, then what else did he say? A. And he said, 'I'm about to complete this job, and I'm going to be in Denison this afternoon anyway, as far as I know, working'.

"Q. Did he say where? A. Yes, sir. He said 'I'll be at the Church of Christ right up the street from the house'. * * *

"Q. Did he say why he was going to be in Denison? A. He said, 'I'm going to be in Denison and the job that Bro. Hooker called about last night. I'm going to be on the church job'."

In 1957 Moody Electric Company had done the electrical work on the Armstrong Church of Christ in Denison. Smithson, as Moody's employee, had done the actual work. Mrs. Smithson testified that the night before the accident while her husband was busy as a teacher in a night school for electricians, Rev. Hooker, Minister of the Church, had 'phoned Smithson's house seeking to communicate with him about corrective work at the church. Smithson had done corrective work on several other previous occasions. There were some changes which Hooker and Smithson had discussed, and Hooker and the church architect wanted very much to get in touch with Smithson about the work in regard to some additional changes. As Smithson was not at home at the time, Hooker gave Mrs. Smithson a message for her husband.

Mrs. Smithson further testified that at the time of his injury her husband had certain hand tools in his pockets, including a flashlight, a screwdriver, two kinds of pliers, and a chisel. There was other testimony that the truck he was driving contained a motor rotary drill, a set of plans and a set of specifications.

Mrs. Smithson also testified that about the noon hour she telephoned to Moody Electric Company, Inc., inquiring where she could communicate with her husband. She wanted him to give instructions to Mr. Wells as to how to place the plastic covering over the furniture as it had begun to rain. In response to a question from Mrs. Everett, the office manager, Mrs. Smithson told her there was no emer-

gency. (As will be seen later, Mrs. Everett's version of this conversation varies from that of Mrs. Smithson.)

Mrs. Fred K. Everett, office manager and bookkeeper, testified that her office records would have shown any assignment for Smithson to work at the church if he had had such an assignment, but that her records did not show any such assignment. However, on cross-examination she stated that her payroll records were made up from the time slips turned in by the workmen *after* they had completed their day's work, and if such slips were not turned in her records would not show any work done that day by a particular workman. She admitted that corrective work was sometimes done on jobs previously completed, but that her records did not show any corrective work.

Mrs. Everett further testified that Mrs. Smithson 'phoned the office about 12:30 P.M. the day of the accident. Mrs. Smithson seemed to be crying and wanted her husband to come home. So Mrs. Everett communicated with Mr. Moody, who was at home getting ready to go to Dallas. Mr. Moody told her to send another employee in a company pick-up truck to a job in Sherman where Smithson was working to get Smithson, then for them to come back by the office, dropping off the other employee, and for Smithson then to use the company truck to proceed to Denison. It was on the trip to Denison that Smithson was involved in a collision in the environs of Denison.

Hal Moody, Vice-President and General Manager of Moody Electric Co., Inc., testified that Mrs. Everett contacted him at home. He corroborated her testimony with reference to his authorizing Smithson to use the company truck to go to Denison. He testified that he had not ordered Smithson to do any work that day on the church in Denison.

Moody also testified that the company had a year warranty on its work that covered "about everything but light bulbs."

He testified that short corrective work was charged either to the previous job or the job following. With reference to the question whether the company would have recognized that under the circumstances Smithson would have been in the scope of his employment if he had done work that afternoon in Denison, we think Moody's testimony is significant, so we quote:

"Q. And if Smithson had turned in a time slip at the end of the day for work on the Church of Christ, that would have been paid by you and not charged to the Church of Christ, wouldn't it, if it were a correction? A. Of course, at that time that warranty was practically up. I mean it would have been a debatable item as to whether it was still in warranty.

"Q. But if he had gone by there and turned in a time sheet, you all would have paid him and it would have been your problem as to whether you were going to bill the church? A. That's correct. * * *

"Q. Uh huh. But there are some jobs you could do, especially corrective work, with just a screw driver and a couple of pairs of pliers and some friction tape? A. That's correct. * *

"Q. If he had turned in a time slip for this corrective work, he would have been paid? A. Yes, sir."

Rev. Donald W. Hooker, Minister of Armstrong Avenue Church of Christ in Denison, testified that Moody Electric Co., Inc., had done work for the church in October 1958. Smithson did the actual work. He had later contacted Smithson on other occasions for certain corrective work. He was not sure of the exact date when he had contacted Smithson the last time, but it was within a day or two of Smithson's accident. He and the architect had decided on additional items to be done, so he 'phoned Smithson's house in Denison. Mrs. Smithson told him Smithson was teaching at the school that night. So

Rev. Hooker left a message for Smithson. He testified that the reason he had not 'phoned to Moody Electric Company, Inc., in Sherman was because the men of his church had instructed him to contact Smithson, a resident of Denison, in order to save the expense of a long distance call. He had called Smithson before and Smithson had always come upon request.

## Opinion.

Appellant's first point on appeal is that the court erred in overruling its motion for summary judgment. In support of its claim that it is entitled to have this point reviewed following entry of a final judgment in the case, appellant cites us to the cases of Gulf C. & S. F. Ry. Co. v. McBride, Tex., 322 S.W.2d 492, and Tobin v. Garcia, Tex., 316 S.W.2d 396.

We do not consider the cited cases in point here. In the first place in her counter-affidavit and in her depositions Mrs. Smithson made certain averments which in our opinion raised a fact issue as to whether Smithson was acting within the scope of his employment when he sustained the injuries from which he later died. In the second place, the two cases above cited were not cases in which a trial on the merits with a full development of the facts was had after the court overruled the motions for summary judgments. They were cases in which both plaintiff and defendant filed motions for summary judgment, one of which was sustained, and the other overruled. No trial on the merits was ever reached in either case. Appellant's first point is overruled.

In its second and third points appellant takes the position that there was no evidence to support a judgment for appellees, consequently it was error for the court to overrule appellant's motion for instructed verdict and its motion for judgment non obstante veredicto. Certainly we believe there was some evidence of probative value in support of the judgment

for appellees as is indicated in the résumé of the evidence heretofore given. Therefore we overrule appellant's second and third points.

It is because of appellant's fourth point that we have reviewed the evidence in this case in some detail. Appellant asserts that the verdict of the jury is contrary to the overwhelming weight and preponderance of the evidence. This then is the question: Is the evidence sufficient to support the jury's answer that Smithson was in the course of his employment with Moody Electric Co., Inc., at the time of his injury on October 21, 1957?

In 1957 our Compensation Act was amended by adding Section 1b to Art. 8309, V.A.C.S. The amendment provides that travel shall not be the basis for a claim for injury during the course of employment, if said travel is also in furtherance of personal or private affairs of the employee "unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip".

Appellant admits that under Texas decisions evidence of the telephone conversation between Smithson in Sherman and his wife in Denison during the morning of the day in question is admissible. It was in that conversation that Smithson told his wife, "I'm about to complete this job and I'm going to be in Denison this afternoon anyway, as far as I know * * *. I'll be at the Church of Christ right up the street from the house * * *. I'm going to be in Denison and (sic) the job that Brother Hooker called about last night. I'm going to be on the church job." Brother Hooker's testimony tends to corroborate Smithson's statement.

Appellant cites and quotes from numerous cases including Texas Employers'

Ins. Ass'n v. Stilwell, Tex.Civ.App., 307 S.W.2d 271 (writ ref. n. r. e.). Wherein the court held that the employee was not within the course of his employment when injured. Among other things the court said that there could not have been any express or implied approval by the employer of the employee's mission since none of employer's agents knew about any such mission until after the collision and injury.

The holding in the Stilwell case does not seem to us to be controlling in this case. We think the testimony of Mrs. Everett on cross-examination and especially the testimony of Hal Moody was sufficient as a basis for a reasonable inference that the type of repair job involved here, done by an old and trusted employee, was in keeping with implied authority from the employer. Moreover, Moody admitted that if Smithson had lived to turn in a payroll slip for a job that day on the Church of Christ in Denison, Smithson would have been paid for his time, and the employer would have billed the church.

Appellant has cited other cases in which it has been held that the employee was not in the course of his employment. Among them are these: American General Insurance Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370; Superior Insurance Company v. Jackson, 156 Tex. 61, 291 S.W.2d 689; Hudiburgh v. Palvic, Tex.Civ.App., 274 S.W.2d 94; Texas Employers' Insurance Ass'n v. Bauer, Tex.Civ.App., 128 S.W.2d 840; and Traders' & General Insurance Co. v. Ratcliff, Tex.Civ.App., 54 S.W.2d 223. We have considered these cases and believe that they are to be distinguished on the facts from the case now before us.

Appellee cites us to Travelers Insurance Co. v. Mullikin, Tex.Civ.App., 241 S.W.2d 175; Jones v. Texas Indemnity Insurance Co., Tex.Civ.App., 223 S.W.2d 286 (err. ref.); Texas Employers' Insurance Ass'n v. Harrison, Tex.Civ.App., 207 S.W.2d 168; Liberty Mutual Insurance Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514; Associated Indemnity Corp. et al. v. Billberg et al., Tex.Civ.App., 172 S.W.2d 157; and Maryland Casualty Co. v. Stewart Tex.Civ.App., 164 S.W.2d 800.

It will be noticed that all of the above cases cited by the parties, appellant and appellees, involved injuries which occurred before passage of the amendment of 1957.

We have carefully considered the record and have concluded that the evidence is sufficient to support the jury verdict. Appellant's fourth point of error is overruled.

In its fifth and sixth points appellant complains of alleged error of the court in (1) refusing to submit its defense to the effect that Smithson at the time of his accident was not in the course of his employment, but was on a personal mission; and (2) in failing to submit separate issues inquiring (a) whether Smithson was traveling in furtherance of his personal or private affairs, and (b) if so, whether he would have made the trip even though there had been no such personal affairs and (c) whether he would not have made the trip had there been no affairs of his employer to be furthered.

Only one issue was submitted to the jury. This issue inquired whether Smithson at the time of his injury on October 21, 1958 was in the course of his employment with Moody Electric Co., Inc., as the term "In the Course of Employment" was defined. The issue was followed by the definition and an additional instruction.

Appellant itself says that the question of course of employment was submitted in traditional terms, except that in addition to the usual definition there was included the following explanation based on the amended statute: "You are further instructed that an injury occurring during the course of travel by an employee in the furtherance of the affairs or business of his employer, is not sustained in the course of employment, if said travel is also in

furtherance of personal or private affairs of the employee unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

'We see no merit in appellant's fifth point. The court affirmatively submitted the ultimate issue of course of employment. It was not necessary for the court to make a separate, negative submission of the same issue upon request of appellant. Wright v. Traders & General Insurance Co., 132 Tex. 172, 123 S.W.2d 314. Appellant's fifth point is overruled.

 Moreover, in regard to appellant's sixth point, we think it was proper to submit one question covering the ultimate issue of course of employment rather than to break the issue down into its separate component parts.

 It is true, as appellant says, that ultimate issues must be submitted separately upon objection and request by either party. Rule 277, Texas Rules of Civil Procedure. For example in negligence cases separate issues must be submitted as to whether an alleged act occurred, whether it was negligence, and whether the negligence was a proximate cause of the injuries alleged. Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111; 41-B Tex.Jur. 582. Another example arises in cases involving allegations of fraud. J. L. Brooks Undertaking Co. v. West, Tex. Civ.App., 67 S.W.2d 1066.

But it is not necessary to submit evidentiary issues. Evidentiary facts may be grouped in one ultimate issue. Texas Employers' Insurance Ass'n v. Chunn, Tex. Civ.App., 274 S.W.2d 939, 943; Fritzmeier v. Texas Employers' Insurance Ass'n, 131 Tex. 165, 114 S.W.2d 236; Texas Employers' Insurance Ass'n v. Pugh, Tex.Civ.App., 57 S.W.2d 248; 41-B Tex.Jur. 589.

In the Fritzmeier case, above cited, in a Commission of Appeals opinion adopted by the Supreme Court, this was said regarding submission of the issue concerning course of employment: "A divided submission of the ultimate issue would not have clarified the matter for the jury, and would have required it to pass upon a number of purely evidentiary issues. The method of submission employed by the trial court is preferable. It enabled counsel to fairly and logically present the question in argument, and was in nowise calculated to confuse or mislead the jury." [131 Tex. 161, 114 S.W.2d 239].

The Fritzmeier case and other cases cited were decided prior to the 1957 amendment to the Workmen's Compensation Act. But we do not believe the amendment had the effect of requiring a separate submission of each evidentiary fact.

Appellant's sixth point is overruled.

The judgment of the trial court is affirmed.