**Alice Agnes MARCH and Shawn Anthony March, a minor, Appellants,**

v.

**VICTORIA LLOYDS INSURANCE COMPANY, Appellee.**

No. 2–88–143–CV.

Court of Appeals of Texas, Fort Worth.

July 6, 1989.

---

Don Prager and David Osborn, Fort Worth, for appellants.

Swift, Bell, Ward & Dorman and Cary Dorman, Fort Worth, for appellee.

Before WEAVER, C.J., and FARRIS and MEYERS, JJ.

## OPINION

FARRIS, Justice.

This is an appeal from a judgment denying worker compensation death benefits. Anthony E. March, a truck driver with R.E.B. Transportation, Inc., died when the truck he was operating left the highway and crashed near Guthrie, Oklahoma, in the early morning hours of March 21, 1982. At trial, Victoria Lloyds Insurance Company, R.E.B. Transportation's compensation carrier, denied liability, alleging that March was intoxicated at the time of the accident and therefore not in the course of his employment. Under the Workers' Compensation Act, injuries received while in a state of intoxication are not considered "injuries sustained in the course of employment." *Texas Indemnity Ins. Co. v. Dill*, 42 S.W.2d 1059 (Tex.Civ.App.—Eastland 1931), *aff'd*, 63 S.W.2d 1016 (Tex.Comm'n App.1933, opinion adopted); TEX.REV. CIV.STAT.ANN. art. 8309, sec. 1 (Vernon 1967).

The jury heard testimony and received evidence that March was driving erratically and at speeds in excess of 80 m.p.h. immediately before the accident, that March smelled of alcohol after the accident, and that several brands of partially full and empty beer cans were found at the scene of the accident. The jury also received, over objection, the lab analysis indicating that March's blood alcohol content was 0.16%. The jury found that March did not sustain his injuries while in the course of his employment.

On appeal, the Marches contend that the trial court erred in entering judgment against them because (1) there was no competent evidence that March was intoxicated

at the time of his death; (2) the trial court erroneously placed the burden of proof on the question of intoxication on them; (3) the court's charge contained an impermissible comment on the weight of the evidence; and because (4) the court refused to instruct the jury that there must be a causal relationship between March's alleged intoxication and injury. In a cross-point, Victoria Lloyds Insurance Company complains that the trial court erred in admitting the testimony of Donald Green. All points of error are overruled and the judgment is affirmed.

In their first four points of error, the Marches assert that the blood alcohol concentration report should not have been admitted because it was untrustworthy, not properly authenticated, and unsupported by expert or opinion evidence as to its meaning. In the alternative, they contend that if the report was admissible, it was evidence only of alcohol consumption and not intoxication.

■ We first address the admissibility of the report. The report was admitted into evidence as a business record accompanied by an affidavit. *See* TEX.R.CIV.EVID. 803(6), 902(10). The Marches assert that the report is inadmissible hearsay and contend that it does not qualify as a business record, attacking the circumstances surrounding the underlying test and the chain of custody. They assert that it is unknown why, when or at whose request the blood was drawn; who drew the sample; what part of the body it was taken from; the path it took from the time it was drawn until it was tested in Oklahoma City; and what procedures were used when the blood was drawn, transported and tested. The report of the laboratory analysis and attached report of the medical examiner indicate that the blood sample was drawn by R.E. Ringrose, M.D., the Logan County medical examiner who conducted the examination into the cause of March's death on the morning of his death and signed the death certificate. The report also shows that the sample was sent to the office of the Chief Medical Examiner in Oklahoma City, where it was analyzed by Richard W.

Prouty, the Chief Forensic Toxicologist, who reported that March's sample contained 0.16% ethyl alcohol.

The report is clear as to who drew the sample and when it was drawn. Although there is no evidence as to why the sample was drawn, this does not affect the trustworthiness of the test itself. Nor is any indication given that the part of the body the blood was drawn from would have any impact on the trustworthiness of the test. The receipt of the sample and testing of the blood by the toxicologist are also established. Any gaps in the chain of custody should go to the weight, and not the admissibility of the evidence. *Missouri–Kansas–Texas Railroad Co. v. May*, 600 S.W.2d 755, 756 (Tex.1980); *Beck v. State*, 651 S.W.2d 827, 828 (Tex.App.—Houston [1st Dist.] 1983, no pet.).

■ The Marches' reliance on Texas statutory requirements for the taking of blood samples from persons suspected of driving while intoxicated is misplaced. *See* TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, sec. 3(c) (Vernon Supp.1989). These requirements pertain only to the admissibility of chemical tests in suits in which a defendant is charged with driving while intoxicated. *Id.* sec. 3(a).

Point of error three is overruled.

■ In their fourth point of error, the Marches assert that toxicologist Prouty's affidavit is insufficient to self-authenticate the blood alcohol report as a business record under TEX.R.CIV.EVID. 902(10). They complain that the affidavit does not attest to the accuracy or trustworthiness of the report, does not state that Prouty was the custodian of records and that Prouty could not have "personal knowledge" of the acts recorded because the blood specimen was drawn by another individual at a different location.

To qualify as a business record under 803(6), a report of acts, conditions or diagnoses must be made at or near the time and can be made by one with knowledge or from information transmitted by one with knowledge. Rule 803(6) also provides that the record must be one made and kept in

the regular practice of the business. In addition, the rule requires that the record be authenticated and provides that the custodian of records or another qualified witness may testify or swear to an affidavit pursuant to Rule 902(10), stating that the above-stated requirements were met.

Rule 902(10) provides that records that would be admissible under 803(6) will be admissible upon the affidavit of the person who would otherwise testify that the prerequisites were met, if the affidavit states that the record was in fact kept as required by Rule 803(6). Rule 902(10)(b) provides a sample affidavit and states that affidavits that follow and substantially comply with it will satisfy the requirement of authentication. Toxicologist Prouty's affidavit tracks the sample affidavit provided in the rule almost verbatim. Prouty did not state he was the custodian of records; however, it is clear that he is a qualified witness and competent to testify to the 803(6) prerequisites.

Although Prouty did not draw the blood sample and therefore does not have personal knowledge of that act, his report is made with information transmitted by the medical examiner who did draw the blood sample. The affidavit states that it was in the regular course of the Office of the Chief Medical Examiner's business to have an employee or representative with personal knowledge of the acts recorded to transmit information concerning the act for inclusion in the records.

As to the Marches' complaint that the affidavit is defective because it does not attest to the accuracy or trustworthiness of the report, we note that the requirements for authentication under Rules 803(6) and 902(10) do not require the sponsoring witness or affiant to testify as to the trustworthiness of the report. The witness or affiant is to set forth the facts upon which an assessment of trustworthiness can be made by the court. Point of error four is overruled.

The Marches also assert there was no evidence of intoxication. They concede that the report is evidence of drinking but contend that without supporting expert testimony as to the meaning or consequences of the report, its admission was contrary to TEX.R.CIV.EVID. 701, 702 and 703. They argue that without any expert testimony as to the significance of the report, the only other way to establish intoxication was to have a lay witness relay factual perceptions or opinions as to March's state of intoxication or sobriety. In the absence of either, they assert there was no evidence of intoxication and March was in the course and scope of his employment at the time of the accident as a matter of law.

The report was admissible without accompanying expert testimony. Rule 701 simply provides that lay witnesses may offer their opinions if they are based on their perceptions and would be helpful in understanding their testimony or making a factual determination. Rule 702 allows a qualified expert to testify if his specialized knowledge would be helpful to the trier of fact in understanding the evidence or determining a fact issue. Rule 703 simply provides that, in certain circumstances, the basis of a testifying expert's opinion need not be admissible into evidence. While the jury's comprehension of the significance of the test results would have been enhanced by expert testimony, they did not need an expert's interpretation of the results to understand that it was evidence that there was alcohol in March's bloodstream at the time of the accident.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First National Bank,* 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a com-

plete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 288 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361 (1960).

■ The Marches contend that because the record does not contain any factual perceptions or opinions of lay witnesses as to the deceased's state of intoxication or sobriety, there is no probative evidence of intoxication. Implicit in the jury's finding that March was not in the course of his employment is a finding that he was intoxicated. The jury's inference that March was intoxicated is supported by the following evidence.

Donald Green testified there were a lot of empty and partially full cans of three different brands of beer at the accident site. Susan Jenson, also traveling with her husband southbound through Oklahoma on I–H 35 the night of the accident, testified that March's truck passed her at a speed of 55 to 65 m.p.h., journeyed off the road past the right shoulder, veered back onto the road and went off the left shoulder before straightening out. She testified that she awoke to find her husband traveling at a high rate of speed and placing a call for emergency assistance on the CB. She stated he was following a semi-truck far ahead of them. The taillights left the road and they drove through a dust cloud. She stated when they backed up, they saw March's truck in the ditch.

Paul Jenson testified that the truck passed them several times and stated that the truck was weaving across the roadway and shoulder and almost struck the front of their car on one occasion. He stated that when he attempted to call the driver on his CB, the response was "weird." He testified it was after the truck again passed them at a high rate of speed, swerving, that he became concerned for the safety of the others on the road and tried to follow the truck while calling for help. Finally, the jury received the traffic collision report in which the investigating officer noted an odor of alcoholic beverage about March's body.

Given the evidence of March's speeding, swerving and near collisions, the presence of alcohol containers at the accident site, the odor of alcohol on March's person and the presence of alcohol in his bloodstream, the jury's finding that March was not in the course of his employment is supported by probative evidence. Points of error one and two are overruled.

■ In points five and six, the Marches complain that the court's charge placed the burden of disproving intoxication on them and constituted an impermissible comment on the weight of the evidence. The special issue in question reads:

ISSUE NO. 1.

Do you find from a preponderance of the evidence that Anthony E. March received such injury in the course of his employment by REB Transportation, Inc., on March 21, 1982?

Injury in the course of employment means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. An injury received while the employee is in a state of intoxication is not in the course of employment.

"Intoxication" means that a person does not have normal use of his mental or physical faculties by reason of the voluntary introduction of any substance in his body.

Answer "WE DO" or "WE DO NOT."

ANSWER: <u>WE DO NOT</u>

■ Generally, a worker's compensation plaintiff has the burden of proving that the injury was sustained in the course

of employment, *Director, State Employees Workers' Compensation Division v. Bush,* 667 S.W.2d 559, 561 (Tex.App.—Dallas 1983, no writ); *Traders' & General Ins. Co. v. Williams,* 66 S.W.2d 780, 783 (Tex. Civ.App.—Eastland 1933, no writ). However, when an employee is found dead at his place of work or where his work requires him to be during work hours, there is a presumption that the accident arose out of and took place in the course of his employment. *Deatherage v. Int'l Ins. Co.,* 615 S.W.2d 181, 183 (Tex.1981). The presumption that the employee was within the scope of employment at the time of the accident may be rebutted by evidence that he was not. *Ashley v. Home Indemnity Co.,* 685 S.W.2d 780, 782 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). Evidence that the accident occurred while the employee was intoxicated rebuts the presumption that the employee was in the course of his employment. *Director, State Employees Workers' Comp. Div.,* 667 S.W.2d at 561; *Traders' & General Ins. Co.,* 66 S.W.2d at 783. In the face of such evidence, it is the claimant's burden to prove that he was not intoxicated at the time of injury. *Texas Employers Ins. Ass'n. v. Monroe,* 216 S.W.2d 659, 661 (Tex.Civ.App.—Galveston 1948, writ ref'd n.r.e.); *Traders & General Ins. Co.,* 66 S.W.2d at 783. When Victoria Lloyds introduced the blood alcohol report and the testimony of those who witnessed March's erratic driving at the accident scene, the burden returned to the Marches, as claimants, to prove that he was not intoxicated and was, in fact, in the course and scope of his employment. Point of error five is overruled.

■ The Marches also complain that special issue number one constituted an impermissible comment on the weight of the evidence because it contained an instruction that injuries sustained in the course of employment do not include injuries received while in a state of intoxication and defined intoxication. They assert that they were entitled to a separate instruction and special issue on intoxication. When the evidence raises intoxication as a statutory exclusion from the course of employment, an instruction and definition on in-

toxication are appropriately submitted in a course of employment issue. It is not necessary for the trial court to make a separate submission on intoxication. *See Liberty Mutual Insurance Co. v. Hopkins,* 422 S.W.2d 203, 207–08 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.); *Maryland Casualty Co. v. Smithson,* 341 S.W.2d 951, 955–56 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.).

■ The court's instruction on intoxication did not constitute an impermissible comment on the weight of the evidence. Rule 277 provides that "[the] court shall submit such instructions and definitions as shall be proper and enable the jury to render a verdict." *Id.* While the court may not comment directly on the weight of the evidence, the charge is not objectionable because an instruction or definition incidentally comments on the weight of the evidence. *Id.* To constitute an impermissible comment on the weight of the evidence, the issue must be worded in a way that indicates the trial judge's opinion as to the truth of the facts inquired about. *Molina v. Payless Foods, Inc.,* 615 S.W.2d 944, 946 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 102 (Tex.Civ. App.—Amarillo 1971, writ ref'd n.r.e.). The trial court's instruction does not indicate that the court was of the opinion that March was intoxicated at the time of the accident. We conclude that the instruction given in special issue number one did not constitute an impermissible comment on the weight of the evidence. Point of error six is overruled.

■ In their final point of error, the Marches assert that the trial court erred in refusing to instruct the jury that there must be a causal relationship between March's alleged intoxication and his fatal injury. The need for causation issues in worker's compensation cases has been addressed and settled. *Texas Indemnity Ins. Co. v. Dill,* 42 S.W.2d at 1060. In *Dill,* the Eastland court held that "[p]roximate cause, as applicable to negligence cases under the common law, has no place in the Workmen's Compensation Law." *Id.* The earlier Beaumont case relied upon by the Marches, *Employer's Casualty Co. v. Wat-*

*son,* 32 S.W.2d 927, 928 (Tex.Civ.App.—Beaumont 1930, no writ), was impliedly overruled by the Texas Supreme Court's adoption of the *Dill* opinion.

In a supplemental letter brief, the Marches assert that the supreme court has returned to reliance on causation in worker's compensation cases. *See Lujan v. Houston General Insurance Company,* 756 S.W.2d 295, 296–97 (Tex.1988). In *Lujan,* a "delayed action" death case, the court held that if the injury had to do with the employee's work, he was in the course of his employment. The Marches assert that this is causation in its simplest form, and accordingly, a causal relationship between the injury and intoxication must be established as well. The requirement that claimants establish that the injury had to do with and originated in the employee's work in order to show that it was sustained in the course of employment, does not impose a causation requirement. *See* TEX.REV. CIV.STAT.ANN. arts. 8306, 8309, sec. 1 (Vernon 1967). The burden imposed by the Workers Compensation Statute, and referred to in *Lujan* falls far short of that which would be imposed upon claimants if they had to establish that the injury was directly and proximately caused by the employee's work. Point of error seven is overruled.

Because all points of error have been overruled and the judgment of the trial court is affirmed, we need not address Victoria Lloyds' cross-point, complaining that the admission of Donald Green's testimony was error in light of the fact that his address and phone number were not provided to them in supplemental responses thirty days prior to trial. Victoria Lloyds prevailed at trial and on appeal. If the trial court erred in admitting Green's testimony, it was harmless error and did not cause the rendition of an improper verdict. *See* TEX.R.APP.P. 81(b).

The judgment of the trial court is affirmed.